## City of Scranton v. Romuglia et al.

*Municipal ordinance—Circulation of printed matter—Ultra vires municipal ordinance.*

That part of the Ordinance of the City of Scranton, File of the Common Council, No. 81, year 1907, which provides that no person be permitted to distribute or circulate printed matter of any character within the city limits before first registering with the director of public safety and paying 50 cents, and providing penalties for the violation thereof, is void as being beyond the corporate powers of a city of the second class.

*Certiorari.* C. P. Lackawanna Co., Oct. T., 1920, No. 747.

*J. K. Barrett,* Assistant City Solicitor, for plaintiff.

*J. J. Levy,* for defendant.

MAXEY, J., April 18, 1921.—Defendants are charged with violation of part of section 2 of an Ordinance of the City of Scranton, entitled "File of Common Council, No. 81, 1907, as amended in Common Council, March 12, 1908, being an ordinance 'to license bill-posters; regulating the posting of bills and the circulating of advertising matter, and the manner of doing business; regulating construction and maintenance of bill-boards; prescribing license fees for the same, and penalties for violation thereof.' " Defendants are particularly charged with "distributing and circulating on July 26, 1920, in the City of Scranton, . . . printed matter to wit, newspaper advertisements, hand-bills and other printed matter within the limits of the City of Scranton, before first having registered with the Director of Public Safety and paying 50 cents for a permit issued by said director," etc. That part of section 2 of said ordinance which defendants are charged with violating reads as follows: "That no person or persons be permitted to distribute or circulate printed matter of any character within the city limits before first having registered with the Director of Public Safety, and upon payment of 50 cents he will issue a permit good for one year, to be used only by person named, and transferable only on written authority of the said director."

The evidence offered in behalf of the prosecution was as follows:

Patrolman Edward Jones: ". . . I had a call in the 1800 block, Pittston Avenue, that two men were out there again handing out bills and blocking the sidewalk up; so I went out and Martin was on the walk there entertaining a crowd of about fifty people. . . . These two men, Martin and Romuglia, had the bills on their arms. I didn't see them pass any out at the time, but a young man there said to me, 'I have one here that was just given to me.' " This young man's name, the witness said, was Michael R. Pittle. The witness identified the bill, and was asked if he saw it circulated himself, and he answered, "No." The officer later says that he "saw them (the defendants) handing the little ones out." It does not appear just what the "little ones" consisted of. The witness was asked, "Do you know whether or not the little one is a clipping from a newspaper?" He answered, "I don't know whether it is or not."

Michael R. Pittle was called as a witness and shown a paper marked on the back, "Michael R. Pittle," and he said he received it from Mr. Martin. He was asked, "Did you see any other handed out there?" He answered, "I seen them handled there, but I didn't see any given out—any more." He said he saw several girls have them, but he didn't know who gave them to the girls.

Pearl Klosky testified that she saw the defendants "giving around different papers." She was asked what kind of papers they were giving around? She said, "It was cut from a newspaper, I guess—the M. & M. strikers, I guess."

Frances Cannon testified that she saw the defendants "passing circulars yesterday." She was shown a paper with Mr. Pittle's name on the back of it, and she was asked, "It that the one you saw handed out?" She answered, "That is the kind."

The foregoing constitutes the substance of the City of Scranton's testimony. The record does not show that the printed matter in question was put in evidence, and we are not definitely informed as to what the printed matter consisted of.

The defendant, Anthony Romuglia, was sworn. He testified that he was an organizer for a labor union, the Amalgamated Clothing Workers of America. He was asked: "Q. This is one of the circulars you are alleged to have handed out? A. Yes, sir. Q. And did you hand this out? A. I did, yesterday. Q. And in that circular the only thing you set forth is calling a meeting? A. It is an invitation to a meeting. Q. At Polonia Hall, Tuesday, July 27th? A. Yes, sir. Q. Let me ask you about this so-called circular; where did you get that circular? A. Out of the Scranton Republican or Times. I could not say. . . . Q. And the matter set forth in that newspaper clipping calls attention to the M. & M. strikers winning their strike? A. Yes, sir. Q. And that is all it does say? A. That is all it says. It says they want 25 per cent. increase and forty-four hours. Q. And they won that? A. Yes, sir."

The defendant, M. L. Martin, was sworn. He testified that he distributed circulars "yesterday noon." He was asked: "Q. This circular here of the meeting at Polonia Hall just calls out a meeting at Polonia Hall? A. Yes, sir."

The witness denied that he circulated the circulars "last night," the occasion of the arrest. We gather from the record that these men had been arrested the day before for circulating this printed matter "at noon," and had been discharged. They were now arrested for circulating printed matter "last evening." Martin denied that he circulated any such printed matter "last evening."

The defendants in this proceeding were on July 27, 1920, adjudged guilty and sentenced to pay a fine of $25, and in default thereof to be committed to the county jail for a period of twenty days. Aug. 2, 1920, a *certiorari* was allowed by the court.

The exceptions filed to the record set forth:

1. That the ordinance whose violation the defendants are charged with is unconstitutional, being defective in title, in that section 2 of said ordinance, under which the defendants are charged, refers to the circulation of any printed matter of whatsoever nature, while the title of the ordinance refers to the regulation of bill-posting and the circulation of advertising matter.

2. That said ordinance is unconstitutional, in that the city council has not the power to regulate the distribution of printed matter under the general revenue clause, art. IX, § 3, par. 22, of the Act of March 7, 1901, P. L. 42.

3. That the information is defective.

4. That the information on which the proceeding is based fails to set forth the ordinance alleged to have been violated.

5. That the record fails to show any information was served on or read to said defendants.

6. That the evidence shows no sufficient cause of action against said defendants, in that said evidence shows that the defendants circulated advertising matter on the morning of July 26, 1920, and were duly arraigned before the police magistrate, and were discharged in the said case, and that they did not circulate any printed matter thereafter.

1 D. & C.

City of Scranton v. Romuglia et al.

7. That the evidence fails to set forth the substance of the printed matter alleged to have been circulated by defendants, so that, on review by an appellate court, it will be apparent, on inspection, that the proceedings were within the magistrate's jurisdiction and that the accused were convicted according to law.

8. That the record is defective in other respects.

From an inspection of the testimony in this case, it appears that the gravamen of the offence charged was the circulation by the defendants of certain clippings from copies of a Scranton newspaper, the clipping calling for a certain meeting to be held in a certain hall of the City of Scranton. We do not think that the acts proved against these defendants are within the legitimate purview of the Ordinance of 1907, No. 81, File of Common Council, as amended in Common Council, March 12, 1908. We do not believe it would be argued that the circulation of the newspapers themselves comes under the provisions of the said ordinance, and surely if the unlicensed circulation of the newspapers is not an offence under said ordinance, the unlicensed distribution of a few clippings from said newspapers cannot be an offence under said ordinance. The purpose to be accomplished by said ordinance, apparently, was to levy upon and collect license taxes or fees from bill-posters who make it their business to circulate advertising matter throughout the city. The power to enact such an ordinance is apparently based on section 3 of art. XIX of the Act of March 7, 1901, par. 22, P. L. 42, that "every city of the second class shall have power for general revenue purposes to levy and collect license taxes or fees, to be fixed by ordinance, upon street railways, hack-drivers, auctioneers, bill-posters, public balls or dances, night-soilers, garbage collectors, railroad switches, pawnbrokers, peddlers, vendors of any kind of merchandise whatsoever, using the streets, lanes, highways, wharves or public squares or grounds for the purpose of vending the same; all theatrical exhibitions, whether permanent or transient (including circuses), vehicles, bicycles, tricycles, automobiles, dogs, ball games or ball parks, and all other matters and things of a like nature, and to regulate the collection of the same and provide penalties for default therein." In so far as the ordinance in question provides for the licensing of bill-posters, it is not an *ultra vires* ordinance. In so far as it attempts to regulate the distribution or circulation of printed matter within the city limits by private individuals, it is beyond the corporate powers of the City of Scranton.

We hold, therefore, that the paragraph of said ordinance which reads as follows, "That no person or persons be permitted to distribute or circulate printed matter of any character within the city limits before first having registered with the Director of Public Safety, and upon payment of 50 cents he will issue a permit good for one year, to be used only by person named, and transferable only on written authority of said director; any person or persons detected by any police officer or other official violating this section to be arrested and disposed of as provided for other similar violations," is void as not being within the legislative powers of the City of Scranton.

If said paragraph of the ordinance is good law, every newsboy in the City of Scranton, and every candidate for public office and every friend of a candidate for public office who distributes the candidate's campaign cards, and every other person who distributes or circulates printed matter of any kind, no matter of how innocuous a character, is liable to a fine of not less than $10 nor more than $50, and in default thereof is liable to be imprisoned in the Lackawanna County jail for a period not exceeding thirty days, unless such person first obtains and pays for a permit from the Director of Public Safety

to circulate such newspaper or campaign cards or printed matter. We do not think the Legislature of Pennsylvania ever intended to confer upon the City of Scranton, or any other city, a power so to regulate or even to tax the distribution or circulation of printed matter. If so, a municipal corporation could practically prohibit the circulation of any newspaper or other printed matter within the city by simply imposing prohibitive license taxes or fees upon the persons seeking to circulate the same. The city can go no farther in its ordinance than to levy and collect license taxes or fees upon those persons who, by virtue of their general business of distributing or circulating advertising matter, come under the classification of bill-posters. There is no charge that the defendants in this case were bill-posters and that they were making a business of circulating advertising matter. The acts for which they were convicted were trifling ones, and it would be as reasonable to arrest and convict a newsboy who distributed and circulated the newspapers from which the clippings in question were obtained as to arrest and convict these defendants, who distributed a few clippings obtained from said newspapers.

The second exception, therefore, of the defendants is sustained in part; that is, while we refuse to hold that the entire ordinance in question is void, we do hold that the paragraph quoted is void, that paragraph being the one that attempts to regulate the distribution or circulation of printed matter, and for the violation of which the defendants were convicted.

It is not necessary for us to pass upon the other exceptions of the defendants.

Therefore, now, to wit, April 18, 1921, the judgment of the police magistrate is reversed.

From M. E. McDonald, Scranton, Pa.